**SO ORDERED.**

**SIGNED this 17 day of February, 2011.**

_____
**J. Rich Leonard**
**United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

**IN RE:**

| | |
|---|---|
| **MARY THERESA SCOTT,** | **CASE NO. 10-00794-8-JRL** |
| **DEBTOR.** | **Chapter 7** |

**METROPOLITAN HEALTH CORPORATION**
**d/b/a METROPOLITAN HOSPITAL, a**
**Michigan corporation, and MICHAEL FAAS,**

**Plaintiffs**

**ADVERSARY PROCEEDING**
**v.**                                         **NO.   10-00101-8-JRL**

**MARY THERESA SCOTT,**

**Defendant**

**ORDER**

This matter came before the court on the plaintiffs' motion for summary judgment.  A

hearing was held on January 20, 2011, in Raleigh, North Carolina.

The defendant, Mary Scott, filed a voluntary chapter 7 bankruptcy petition on February 3,

2010.  On May 5, 2010, the plaintiffs, Metropolitan Health Corporation ("Metropolitan

Hospital") and Michael Faas, filed the instant adversary proceeding to determine the

dischargeability of a debt owed to them.  The debt is based on two orders issued in 2005 by the United States District Court for the Western District of Michigan, requiring Ms. Scott to pay $18,966.40 in statutory costs pursuant to 28 U.S.C. §1920 and $1,608,268.80 in attorneys' fees and expenses as sanctions for litigation misconduct.  The plaintiffs seek an order declaring the debt nondischargeable as it results from a willful and malicious injury caused by the debtor to the plaintiffs pursuant to 11 U.S.C. §523(a)(6).

## BACKGROUND

On July 2, 2002, Ms. Scott, a senior vice president at Metropolitan Hospital, filed a *qui tam* action under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 *et seq*., for the purpose of suing on behalf of the United States concerning false Medicare claims.  The United States chose to intervene, and eventually Metropolitan Hospital voluntarily settled the *qui tam* claims in January 2004.  Pursuant to the FCA, Ms. Scott received 18 percent of the settlement as the relator of the claims—$1,203,529.16.[1]  Coinciding with the *qui tam* action, Ms. Scott faced difficulties in her relationship with Metropolitan Hospital and her colleagues.  She was placed on paid administrative leave from Metropolitan Hospital in June 2002 due to allegations of misconduct.  On January 31, 2003, she was terminated from her employment, approximately one year before the settlement of the *qui tam* claims was finalized.

Ms. Scott sued Metropolitan Hospital on several grounds, but primarily under the FCA's anti-retaliation provision, §3730(h), granting relief to employees who suffer discrimination for their efforts to stop violations of the FCA.  The United States District Court for the Western

---

[1]Ms. Scott has only received $777,058.64 of her portion of the settlement from Metropolitan Hospital.  The remaining payment was not disbursed when subsequent sanctions, discussed *infra*, against Ms. Scott were issued in excess of that amount.

District of Michigan ("the District Court") granted summary judgment in favor of Metropolitan

Hospital and Mr. Faas on Ms. Scott's FCA retaliation claims.  Of most relevance to this court,

the decision of the District Court rested on finding that Metropolitan Hospital had legitimate,

nondiscriminatory reasons for terminating Ms. Scott.

      The District Court found a record of employee misconduct.  Ms. Scott had issues

interacting with co-workers, subordinates, physicians and managers in the period before filing

the *qui tam* action.  United States *ex rel.* Mary Scott v. Metropolitan Health Corp., No. 1:02-CV-

485, at 5-6 (W.D. Mich. June 23, 2005) [hereinafter June 2005 order].  The "truck load of straw

that broke the camel's back," in terms of Metropolitan Hospital's tolerance of Ms. Scott, was her

treatment of audiotapes and minutes of the February 7, 2002 Metropolitan Enterprises Board

meeting.  June 2005 order, at 17.  Ms. Scott's assistant typed minutes of that meeting based on

three audio tapes of the meeting.  Id.  Soon after, Ms. Scott's assistant found Ms. Scott "rifling

through her desk" looking for the tapes because she believed the minutes were inaccurate.  Id. at

17-18.  Ms. Scott took the tapes, altered the minutes, and never returned them, claiming they

were lost.  Id. at 18.  The tapes later "showed up" during the retaliation lawsuit after great efforts

exerted by Metropolitan Hospital to obtain them.  Id.  The District Court found that Ms. Scott

made at least two significant changes to the minutes which misrepresented what went on at the

meeting.  Her alterations were in violation of protocol and her duties as an officer of the

corporation, and constituted legitimate grounds for dismissal.  Id. at 22.

      After granting summary judgment to Metropolitan Hospital and Mr. Faas on the

retaliation claim, the parties moved for statutory costs and sanctions against Ms. Scott for

litigation misconduct in bringing the retaliation suit.  Ms. Scott's delayed disclosure of the tapes

and knowledge that her behavior constituted legitimate grounds for dismissal were central to the

District Court's dispensation of sanctions.  The combination of Ms. Scott's awareness of her

corporate misconduct and the delayed disclosure of proof of this misconduct infuriated the

District Court.  United States *ex rel.* Mary Scott v. Metropolitan Health Corp., No. 1:02-CV-485,

at 3 (W.D. Mich. Dec. 13, 2005) ("Leniency in sanction is not advised by the conduct of Mary

Scott nor the precepts of justice.") [hereinafter December 2005 order].  Her misconduct was

"documented beyond dispute" but only after Metropolitan Hospital spent substantial resources to

"flush out the truth from Scott."  Id.  Namely, Ms. Scott filed false affidavits and failed to

turnover the tapes of the board meeting, as well as other tapes required by the defense.[2]  Id.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), made applicable in bankruptcy by

Bankruptcy Rule 7056, summary judgment is proper "if the pleadings, depositions, answers to

interrogatories and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  The "plain language of Rule 56(c) mandates the entry of summary judgment,

after adequate time for discovery and upon motion, against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In making this determination, conflicts are resolved by viewing all facts and all reasonable

inferences in the light most favorable to the nonmoving party.  United States v. Diebold, Inc.,

---

[2]Ms. Scott claimed the non-disclosure of the tapes was the result of a mistake on the part
of a paralegal employed by her counsel; the court did not find this explanation credible.
December 2005 order, at 3 n.4.

-4-

369 U.S. 654, 655 (1962).

**DISCUSSION**

For purposes of the court's analysis, there are two debts at issue in this dischargeability action: (1) the $18,966.40 awarded in the September 2005 order as statutory costs and (2) the $1,608,268.80 awarded in the December 2005 order as sanctions stemming from Ms. Scott's litigation misconduct.  Based on the facts and findings of the District Court, the bankruptcy court must determine whether these debts are based on a willful and malicious injury inflicted by the debtor pursuant to 11 U.S.C. §523(a)(6) in order to determine their dischargeability.

A discharge under chapter 7 does not entitle an individual debtor to discharge debts incurred "for willful and malicious injury by the debtor to another entity or to the property of another entity.  11 U.S.C. § 523(a)(6).  At issue is whether the judgments against Ms. Scott for attorneys fees and sanctions are debts for a willful and malicious injury caused by Ms. Scott and sustained by the plaintiffs.  The terms "willful" and "malicious" each modify the term "injury" and require separate analysis.  United States v. Buck (In re Buck), 406 B.R. 703, 706 (Bankr. E.D.N.C. 2009).  Each must be proven by a preponderance of the evidence to except the debt from discharge.  Id.  With respect to willful injury, the Supreme Court held that "nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury."  Kawaauhau v. Geiger (In re Geiger), 523 U.S. 57, 61 (1998).  A malicious injury is one that occurs when the "debtor was knowledgeable that his actions were wrong."  Buck, 406 B.R. at 706.  The debtor's conduct may provide circumstantial evidence of knowledge, and ill will has no bearing on the definition of malice.  Id.

The bankruptcy court is collaterally estopped from deciding whether an injury was

-5-

willful and malicious where such issues were already determined in prior judicial proceedings.

See Hagen v. McNallen (In re McNallen), 62 F.3d 619, 625 (4th Cir. 1995).  Furthermore, the

Supreme Court has held that collateral estoppel principles apply in dischargeability proceedings.

Grogan v. Garner, 498 U.S. 279, 284-85 n.11 (1991).  For collateral estoppel to apply, the first

court must have made "specific, subordinate, factual findings . . . encompass[ing] the same

*prima facie* elements as the bankruptcy issue." Dennis v. Dennis (In re Dennis), 25 F.3d 274,

278 (5th Cir. 1994); See also Combs v. Richardson, 838 F.2d 112, 117 (4th Cir. 1988) (holding

that issue preclusion only applies where there is a congruence between the statutory standard in

§523(a)(6) and the prior judgment).

## A. Willful and Malicious Injury

Before turning to the elements of collateral estoppel, the court finds that the District

Court made predicate factual findings of a willful and malicious injury as to the sanctions, but

not as to the statutory costs.  The $18,966.40 debt incurred for statutory costs is based on 28

U.S.C. §1920.  The statute allows a court to tax a party with the clerk of court's fees, fees for

transcripts, compensation of court appointed experts, and other court related costs.  Federal Rule

of Civil Procedure 54(d) provides a default rule that costs, other than attorney's fees, should be

allowed to the prevailing party—here Metropolitan Hospital and Mr. Faas.  A court can deny

costs to the prevailing party under a more limited set of circumstances, none of which were

found by the District Court.  September 2005 order, at 16 (citing Texler v. Summit Bd. Of

Mental Retardation & Develpomental Disabilities, 1994 WL 252938, *9 (6th Cir. 1994)).  Here,

the $18,966.40 debt was incurred by Ms. Scott for simply losing the lawsuit and did not require

the District Court to determine whether she acted willfully or maliciously to injure Metropolitan

Hospital and Mr. Faas.  Therefore, it is not excepted from discharge under 11 U.S.C. §523(a)(6).

However, the $1,608,268.80 debt incurred as sanctions was based on the debtor's willful and malicious injury of the plaintiffs.  In applying the *Geiger* test for finding "willful injury," it is important to first identify the injury.  In re Rountree, 2002 WL 832669, *7 (Bankr. M.D.N.C. 2002).  Here, the time and money expended by Metropolitan Hospital in defending Ms. Scott's retaliation claim constitutes the injury.  With respect to Ms. Scott's *willful* injury of Metropolitan Hospital, the District Court made several findings which, when taken together, satisfy the definition of willful injury under §523(a)(6).  As stated above, a "willful injury" is a "deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury."  Geiger, 523 U.S. at 61.  Judge Enslen found that Ms. Scott "continued the suit to press an illegitimate 10-million dollar claim, one she knew to be false—that she was fired in retaliation."  December 2005 order, at 2.  He described her conduct as having been "to deny secret wrongdoing, until confronted with undeniable evidence of it" and that she has not displayed "any semblance of self-responsibility or remorse concerning . . . her wrongful litigation conduct which concealed her wrongful workplace conduct."  Id. at 3.  Finally, Judge Enslen found that Ms. Scott intentionally concealed multiple tape recordings and intentionally filed false affidavits related to the board minutes issue.  Id. at 11.  These findings are "sufficient to show that the conduct amounted to a 'badge of intent'" in qualifying as a willful injury under §523(a)(6).  Mann Bracken, LLP v. Powers (In re Powers), 421 B.R. 326, 338 (Bankr. W.D. Tex. 2009).

In terms of factual findings which demonstrate a "malicious injury," the court also finds that Judge Enslen made several which satisfy§523(a)(6).  Again, a malicious injury occurs when the "debtor was knowledgeable that his actions were wrong."  Buck, 406 B.R. at 706.  Judge

-7-

Enslen found "[t]he filing and litigation of the retaliation claim was, in light of this record, motivated by an 'improper purpose' to harass and extort Plaintiff's former employer." December 2005 order, at 11; see also December 2005 order, at 18 (describing the suit as "frivolously and vexatiously maintained").   He refers to Ms. Scott's knowledge that the retaliation claim was false, and to her intentional concealment of crucial evidence.  December 2005 order, 2, 11. Although Judge Enslen does not use the precise term, "malicious," his findings are tantamount to it.

**B. Collateral Estoppel**

Having determined the District Court found the injury to be a willful and malicious one, the court next addresses the issue of whether it is bound by this determination through the principles of collateral estoppel.  Courts apply federal common law principles of collateral estoppel, when assessing the preclusive effect of a prior federal court action.  Shepard v. O'Quinn (In re O'Quinn), 401 B.R. 739, 743 (Bankr. M.D.N.C. 2009) (citing Shoup v. Bell & Howell Co., 872 F.2d 1178, 1179-80 (4th Cir. 1989)).  Under this standard, federal actions are given a preclusive effect when the following four elements are satisfied:

    (1) the issue sought to be precluded was the same as that involved in the prior action;
    (2) that issue was actually litigated;
    (3) it was determined by a valid and final judgment; and
    (4) the determination was essential to the prior judgment.

Combs v. Richardson, 838 F.2d 112, 115 (4th Cir. 1988) (citing In re Ross, 602 F.2d 604, 607-608 (3rd Cir. 1979)).

First, the issue addressed by District Court is identical to the issue before this court: whether Ms. Scott willfully and maliciously injured the plaintiffs.  Although the District Court does not use the terms "willful and malicious" in articulating the issue before it—whether Ms.

-8-

Scott's litigation conduct was in *bad faith*—Judge Enslen's factual findings on that issue, as stated above, are the equivalent of a finding of willful and malicious conduct. Though phrased slightly different, the issues are the same. Furthermore, in establishing the standard for sanctions, Judge Enslen cited *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), which allows an award of attorney's fees when a party has "'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Chambers, 501 U.S. at 45-46 (citations omitted). To apply this standard, the District Court had to resolve the issue of whether Ms. Scott acted intentionally and maliciously.

Second, the issue was actually litigated. There is no requirement that a trial or evidentiary hearing be held for an issue to be "actually litigated." Raspanti v. Keaty (In re Keaty), 397 F.3d 264, 271 (5th Cir. 2005). For an issue to be actually litigated, the issue must be raised, contested by the parties, submitted for determination, and determined. Id. at 272. The District Court stated, "The sanction request depends on an analysis of [Ms. Scott] and [Ms. Scott's] counsel's litigation conduct, including discovery conduct." September 2005 order, at 2. The District Court went on to specify it would analyze the concealment and non-disclosure related to the board meeting minutes. Its analysis was based on extensive briefs, sur-replies, and exhibits submitted by both parties. Thus the issue of Ms. Scott's conduct was raised, contested, submitted for determination, and determined.

Third, the issue was resolved by a valid and final judgment. It is unclear to the court how Ms. Scott's sanctions could have been more final. The District Court's ruling was appealed to the Sixth Circuit, which specifically affirmed on all three bases for awarding sanctions—Rule 26(g), Rule 56(g), and the court's inherent authority. Scott v. Metropolitan Health Corp., 234 F. App'x

-9-

341, 367-68 (6th Cir. 2007). The Supreme Court denied granting certiorari for the Sixth Circuit appeal. <u>Scott v. Metropolitan Health Corp.</u>, 552 U.S. 1224 (2008). Every level of the federal judiciary has reviewed and rendered judgment on the facts and arguments briefed by the parties as they pertain to sanctions and litigation misconduct.

Finally, determining the nature of Ms. Scott's conduct was essential to the District court's judgment. Judge Enslen based the larger $1.6 million judgment on the court's inherent authority to sanction particularly egregious behavior. Although awards based on inherent authority are rare, the District Court felt it was appropriate in Ms. Scott's case. December 2005 order, at 7 ("Inherent authority 'bad faith' awards are thankfully rare events in the federal courts, but have proven necessary to prevent wholesale abuse of justice."). To apply this standard, it was essential that the District Court assess the extent to which Ms. Scott's actions were in bad faith. In doing so, the District Court made specific factual findings which, as stated above, were tantamount to willful and malicious behavior resulting in injury to Metropolitan Hospital.

## CONCLUSION

Having determined that the District Court made particular findings which satisfy the definitions of a willful and malicious injury under 11 U.S.C. §523(a)(6), and that the bankruptcy court is precluded from ruling otherwise on this issue, the court grants summary judgment in favor of the plaintiffs, Metropolitan Hospital and Mr. Faas. The sanctions owed by Ms. Scott to the plaintiffs are based on a willful and malicious injury caused by the debtor, and are therefore nondischargeable under the Bankruptcy Code.

## END OF DOCUMENT

-10-