**SO ORDERED.**

**SIGNED this 06 day of June, 2011.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION**

| | |
|---|---|
| **IN RE:** | |
| **MARY THERESA SCOTT,** | **CASE NO. 10-00794-8-JRL** |
| **DEBTOR.** | **Chapter 7** |
| **METROPOLITAN HEALTH CORPORATION d/b/a METROPOLITAN HOSPITAL, a Michigan corporation, and MICHAEL FAAS,** | |
| **PLAINTIFFS** | **ADVERSARY PROCEEDING** |
| v. | **NO. 10-00101-8-JRL** |
| **MARY THERESA SCOTT,** | |
| **DEFENDANT** | |

**ORDER**

This matter came before the court on the defendant's motion to reconsider the court's order granting summary judgment in favor of the plaintiffs. A hearing was held on April 11, 2011, in Raleigh, North Carolina.

The defendant, Mary Scott, filed a voluntary chapter 7 bankruptcy petition on February 3, 2010. On May 5, 2010, the plaintiffs, Metropolitan Health Corporation ("Metropolitan

Hospital") and Michael Faas, filed the instant adversary proceeding to determine the dischargeability of a debt owed to them. The debt is based on two orders issued in 2005 by the United States District Court for the Western District of Michigan, requiring Ms. Scott to pay $18,966.40 in statutory costs pursuant to 28 U.S.C. §1920 and $1,608,268.80 in attorneys' fees and expenses as sanctions for litigation misconduct. This court granted summary judgment in favor of the plaintiffs on February 17, 2011, declaring the $1,608,268.80 sanctions debt nondischargeable and the $18,966.40 in statutory costs dischargeable. The defendant now requests the court reconsider its ruling regarding the dischargeability of the sanctions.

## BACKGROUND

The sanctions issued against Ms. Scott were based on a lawsuit she filed for wrongful termination. Ms. Scott received a percentage of a settlement of a *qui tam* action under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 *et seq*., concerning false Medicare claims against Metropolitan Hospital. The FCA contained an anti-retaliation provision to protect whistle blowers such as Ms. Scott. When Ms. Scott was terminated from her employment with Metropolitan Hospital, in the midst of the settlement, she filed the wrongful termination suit. The anti-retaliation provision of the FCA allows for termination of employment where other, non-discriminatory grounds for dismissal exist. The District Court not only found that these non-discriminatory grounds existed, but that Ms. Scott knew of Metropolitan Hospital's legitimate reasons and failed to disclose tape recordings which established the legitimate grounds.[1] Metropolitan Hospital moved for sanctions, attorneys' fees and costs in light of Ms.

---

[1] One integral instance of employee misconduct was Ms. Scott's alteration of board meeting minutes that misrepresented what occurred and was in direct violation of protocol. The tape recordings were of the meeting and proved that Ms. Scott's alterations were misleading.

Scott's misconduct. Ms. Scott's delayed disclosure of the tapes and knowledge that her behavior constituted legitimate grounds for dismissal were central to the District Court's dispensation of sanctions.

Ms. Scott later moved to North Carolina where she filed her chapter 7 petition with this court. Metropolitan Hospital based its dischargeability action on 11 U.S.C. § 523(a)(6), arguing that the sanctions awarded by the District Court constituted a debt incurred for a willful and malicious injury caused by the debtor. This court found that it was collaterally estopped from making its own determination as to the character of the debt because the District Court made findings of fact that the sanctions were awarded as a result of Ms. Scott's willful and malicious conduct. Ms. Scott now moves that the court reconsider its ruling pursuant to Rule 59(e) of the Federal Rules of Civil Procedure.

## DISCUSSION

A party may move that the court amend an adverse judgment already entered against it pursuant to Rule 59(e) if the court, in its discretion, finds there has been an intervening change of controlling law, new evidence becomes available, or a need to correct a clear error or prevent manifest injustice. Robinson v. Wix Filtration Corp. LLC, 599 F.3d 403, 411 (4th Cir. 2010). The motion may not be used "to raise arguments which could have been raised prior to the issuance of the judgment, nor may [it] be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998) cert. denied, 525 U.S. 1104 (1999). Ms. Scott requests the

---

After claiming she had lost the recordings, Ms. Scott later turned over the tapes, but only after Metropolitan Hospital expended much time, effort and money litigating the suit.

bankruptcy court's judgment declaring the sanctions debt nondischargeable be reconsidered to correct a clear error or prevent manifest injustice. In particular, Ms. Scott argues the court erred not in the application of the elements of collateral estoppel, but in the determination that the doctrine should be applied at all.[2]

As discussed in the order granting summary judgment in favor of Metropolitan Hospital, federal actions are given a preclusive effect when the following four elements are satisfied:

> (1) the issue sought to be precluded was the same as that involved in the prior action;
> (2) that issue was actually litigated;
> (3) it was determined by a valid and final judgment; and
> (4) the determination was essential to the prior judgment.

Combs v. Richardson, 838 F.2d 112, 115 (4th Cir. 1988) (citing In re Ross, 602 F.2d 604, 607-08 (3rd Cir. 1979)). Yet, even where the elements of collateral estoppel are satisfied, the doctrine should not be applied where it would be inequitable to do so. See, e.g., PenneCom B.V. v. Merrill Lynch & Co., Inc., 372 F.3d 488, 493 (2d Cir. 2004) ("collateral estoppel is an equitable doctrine–not a matter of absolute right"); Nations v. Sun Oil Co., 705 F.2d 742, 745 (5th Cir. 1983) (stating application of collateral estoppel "is controlled by the principles of equity").

The discussion of whether application of collateral estoppel would be equitable is influenced by the type of collateral estoppel at issue. Defensive collateral estoppel occurs when "a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another defendant." Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 326 n.4 (1979). Offensive use occurs when "the plaintiff seeks to foreclose the defendant from

---

[2] Ms. Scott acknowledges that challenging the application of the elements is appropriate as an appeal and not a Rule 59 motion.

litigating an issue the defendant has previously litigated unsuccessfully in an action against another party." Id.  Mutual collateral estoppel, which can be either defensive or offensive, occurs when the parties to the prior and present actions are identical.  See id. at 326.  Since Metropolitan Hospital sought and was awarded sanctions by the District Court, and subsequently requested those findings have a preclusive effect in the dischargeability action, the use of collateral estoppel is mutual, because the parties to the prior and present actions are identical.

In a case of mutual collateral estoppel, the Restatement Second of Judgments lists various factors to consider in applying the doctrine:

> (1) The party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action; or
>
> (2) The issue is one of law and (a) the two actions involve claims that are substantially unrelated, or (b) a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws; or
>
> (3) A new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts or by factors relating to the allocation of jurisdiction between them; or
>
> (4) The party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action; or the adversary has a significantly heavier burden than he had in the first action; or
>
> (5) There is a clear and convincing need for a new determination of the issue (a) because of the potential adverse impact on the public interest or the interests of persons not themselves parties in the initial action, (b) because it was not sufficiently foreseeable at the time of the initial action that the issue would arise in the context of a subsequent action, or (c) because the party sought to be precluded, as a result of the conduct of his adversary or other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action.

Restatement (Second) of Judgments §28 (1982).  Courts have found these factors influential in

refraining from applying collateral estoppel.  See, e.g., McHan v. C.I.R., 558 F.3d 326, 331 (4th Cir. 2009) (declining to apply collateral estoppel because burdens of proof differed in both actions and ran in different directions); National R.R. Passenger Corp. v. Penn. Public Utility Comm'n, 288 F.3d 519, 525-26, 528 (3d Cir. 2002) (examining whether the same issue of law arose in substantially unrelated circumstances and whether there was an intervening change in the applicable legal context); Cohen v. Bucci, 905 F.2d 1111, 1113 (7th Cir. 1990) (holding that debtor had same incentive to defend himself in fraudulent transfer action as he did in subsequent discharge denial action based on that fraudulent transfer and thus the issue had a preclusive effect).

Ms. Scott's motion primarily focuses on the third factor and portions of the fifth—that the deficient quality and extensiveness of the procedures followed by the District Court weigh against applying collateral estoppel and that Ms. Scott did not have an adequate opportunity to obtain a full and fair adjudication in the initial action.  These concerns stem from the lack of an evidentiary hearing held by the District Court in awarding sanctions and in determining the extent of attorneys' fees incurred.  Ms. Scott argues that while the lack of a hearing may not have been a reversible error on the part of the District Court, it is a deficiency that should render the findings non-conclusive for purposes of collateral estoppel.

The court does not find the District Court's decision not to hold an evidentiary hearing sufficient equitable grounds for refraining from applying collateral estoppel.  Although the procedure of the District Court is not one this court might have chosen under the circumstances, the procedure followed does not rise to the level of injustice or unfairness such that this court should ignore the findings reached.  Particularly persuasive is the fact that the Sixth Circuit, on

appeal, did not take issue with the lack of evidentiary hearing.  The Sixth Circuit noted that "dispositive motions are routinely decided on papers filed by the parties."  Scott v. Metropolitan Health Corp., 234 F. App'x 341, 359 (6th Cir. 2007).  The District Court based its findings on numerous and voluminous affidavits, exhibits, depositions, briefs, replies, and sur-replies, all of which the District Court examined and cited to in its opinions.  Again, while this court may have chosen to hold an evidentiary hearing, the procedure chosen is not such a deficiency that the principles of collateral estoppel should not be followed.

Declining to apply mutual collateral estoppel is something that should be done in extraordinary circumstances where one or more of the equitable considerations listed above are present.  As it relates to the fifth factor discussed in the Restatement, declining to apply the doctrine for inadequate opportunity or incentive to obtain a full and fair adjudication should only occur where a "clear and convincing need for a new determination of the issue" is established.  Restatement (Second) of Judgments §28(5).  In a broader context, the distinction between mutual and non-mutual collateral estoppel highlights this need.  Until the Supreme Court's decision in Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found., 402 U.S. 313 (1971), the principle of mutuality governed.  Parties or their privies to both actions had to be identical for the prior judgment to be determinative in the second.  Blonder-Tongue Labs., Inc., 402 U.S. at 320-21.  The Supreme Court overruled the strict adherence to the principle of mutuality of estoppel—in that case as it related to patent infringement—and allowed for collateral estoppel to apply to different parties in subsequent actions, subject to certain equitable considerations.[3]  Therefore,

---

[3]Situations in which it would be unfair to apply non-mutual offensive collateral estoppel were discussed in Parklane Hosiery Co., 439 U.S. at 328-31, and summarized in Jack Faucett Assocs., Inc. v. Amer. Telephone and Telegraph Co., 744 F.2d 118, 125-26 (D.C. Cir. 1984).

mutuality of estoppel is a foundational characteristic considered by courts in this area of law. When the parties to both actions are identical, the arguments supporting the doctrine—judicial economy, consistency, and incentive for vigorous and thorough litigation—are at their strongest. The equitable considerations that weigh against applying collateral estoppel must be clearly and definitively present when mutuality exists to justify refraining from applying the doctrine.

Additionally, Ms. Scott argues that the pending Rule 60(b) motion before the Sixth Circuit is further equitable grounds for not giving the District Court's findings preclusive effect. Although a Rule 60(b) motion does not necessarily impact a court's determination of whether a judgment is "final" for collateral estoppel purposes, Ms. Scott argues the motion, which deals with jurisdictional issues and recent Supreme Court law governing recusal, should influence this court's equitable analysis. The court finds it inconsistent to determine that the pending motion does not impact the finality of the District Court's decision under the elements of collateral estoppel, and at the same time hold that, out of fairness, the pending motion renders the decision less reliable or worthy of having a preclusive effect. Of further persuasion is the fact that Metropolitan Hospital recently moved for relief from the automatic stay in order to proceed in defending Ms. Scott's appeal and obtain a resolution from the Sixth Circuit. The court denied that motion, allowing Ms. Scott to stay the litigation she instituted, particularly in light of mounting legal costs associated with it. However, Ms. Scott cannot benefit from the contradicting positions—that as to this motion, the pending appeal is grounds to amend the judgment against her, while as to the motion for relief from stay, it would benefit the debtor and the estate to halt the appellate proceedings.

## CONCLUSION

The court finds no equitable grounds for declining to apply the doctrine of collateral estoppel to the District Court's findings that the sanctions were based on Ms. Scott's willful and malicious injury to Metropolitan Hospital and Mr. Faas. Based on the foregoing, the motion to reconsider is **DENIED**.

**END OF DOCUMENT**