UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:12-CV-383-F

| | | |
|---|---|---|
| MARY THERESA SCOTT,<br>      Appellant, | ) ) ) ) | |
| v. | ) ) ) | |
| METROPOLITAN HEALTH<br>CORPORATION d/b/a METROPOLITAN<br>HOSPITAL, | ) ) ) ) | ORDER |
|     and | ) ) | |
| MICHAEL FAAS,<br>      Appellees. | ) ) | |

This matter is before the court on Appellant Mary Theresa Scott's ("Scott") appeal from

two orders of the Bankruptcy Court for the Eastern District of North Carolina [DE-1]. The

appeal has been fully briefed and is ripe for disposition. For the reasons explained below, the

bankruptcy court's orders are AFFIRMED.

## I. PROCEDURAL AND FACTUAL HISTORY

The Bankruptcy Code excepts from discharge any debt incurred "for willful and

malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. §

523(a)(6). On summary judgment, the Bankruptcy Court held that Scott was collaterally

estopped from arguing that she did not willfully and maliciously injure Metropolitan Health

Corporation and Michael Faas (collectively, "Metropolitan") by pursuing a factually baseless

employment retaliation lawsuit. As a result, the Bankruptcy Court held the $1.6 million

sanctions award imposed against her in connection with the retaliation lawsuit was a debt

incurred "for willful and malicious injury . . . to another entity" and was thus non-dischargeable pursuant to § 523(a)(6). Scott challenges the Bankruptcy Court's application of the elements of collateral estoppel.

Because the bankruptcy court granted Metropolitan's motion for summary judgment on the dischargeability of Scott's debt, the court relates the facts in the light most favorable to Scott. *Mercantile Peninsula Bank v. French (In re French)*, 499 F.3d 345, 348 n.1 (4th Cir. 2007). Scott began her employment with Metropolitan in 1997 as the Senior Vice President for Network Operations. Her primary duties involved improving the profitability of certain businesses associated with Metropolitan, which itself is a non-profit organization. Scott had leadership management roles in most of Metropolitan's associated for-profit businesses. During her employment, Scott had access to Metropolitan's physician billing practices, including Metropolitan's Medicare reimbursement billing procedures.

This litigation began in 2002, when Scott initiated a *qui tam* action under the False Claims Act ("FCA"), 31 U.S.C. 3729 *et seq.* against Metropolitan in the Western District of Michigan ("Michigan District Court"), alleging that Metropolitan engaged in a pervasive fraudulent Medicare billing practices. Scott later amended her complaint to add an employment retaliation claim under 31 U.S.C. § 3730(h) . The case was assigned to Judge Enslen, United States District Judge, who presided over the case throughout much of the litigation at the district court level. The United States intervened in part and the parties ultimately settled the *qui tam* action. While admitting no wrongdoing, Metropolitan agreed to pay $6,250,000.00 to the United States in the settlement agreement. Scott was entitled to a relator fee of $1,125,00.00 plus interest as part of the settlement.

2

Scott's retaliation claim continued after the *qui tam* portion of the case settled. The retaliation claim related to numerous alleged adverse actions taken against Scott after she brought the purportedly fraudulent billing practices to Metropolitan's attention. After placing Scott on paid administrative leave on June 12, 2002, Metropolitan ultimately terminated Scott's employment on or about January 30, 2003. Thereafter, Scott amended her complaint to add the termination action to her retaliation claim. After two years of discovery and the development of an extensive record, the Michigan District Court granted summary judgment in favor of Metropolitan on the retaliation claim. The Michigan District Court held only one hearing on a peripheral issue related to a lien on Scott's relator fee before deciding Metropolitan's motion for summary judgment.

The Michigan District Court found that Metropolitan's decision to terminate Scott's employment was not a retaliatory discharge in response to her FCA whistleblower activity. Instead, the Michigan District Court found that Scott's workplace behavior, which included interfering with an internal investigation into the billing practices, falsifying the minutes of a key corporate meeting, and concealing the tape recordings of the meeting, provided sufficient cause to terminate Scott's employment. Most of the details of Scott's behavior and of the District Court's reasoning are not directly relevant for purposes of the present appeal. They may be found at *United States ex rel. Scott v. Metro. Health Corp.*, 375 F. Supp. 2d 626 (W.D. Mich. 2005).

Scott's behavior in falsifying the corporate minutes and concealing the tape recordings of the corporate board minutes, however, is highly relevant to this appeal. On February 7, 2002, Metropolitan Enterprises held a corporate board meeting that Scott and her assistant attended. In

3

accordance with standard corporate practice, the meeting was tape recorded and the Board

assigned Scott's assistant the task of typing the minutes using the tape recordings. Scott's

assistant completed the minutes on April 24, 2002. The following day, the assistant observed

Scott rifling through her desk. When confronted with this behavior, Scott explained that she was

looking for the audiotapes of the meeting because she thought the minutes the assistant typed

were inaccurate.

Scott ultimately altered the version of the minutes her assistant produced because she

believed them inaccurate. Scott explained that she intended to check her modifications against

the tape recordings, but she was unable to do so because she lost the tape recordings. During the

lengthy discovery period, Scott submitted up to three affidavits describing the revisions she made

to the minutes as "accurate." However, during discovery the three tapes were "found"[1] and the

Michigan District Court had an opportunity to review the changes Scott made to the minutes

against the tape recordings of the meeting and the assistant's version of the minutes. The

Michigan District Court found that Scott made two substantial changes to the minutes, "which

misrepresented what was said at the meeting and which, thereby, violated her protocol and her

general corporate and officer duties." *Scott*, 375 F. Supp. 2d at 639. Because Metropolitan had

reasonable cause to believe that Scott altered the minutes of a corporate board meeting, the

Michigan District Court found that Metropolitan's reason for terminating Scott's employment

was not a pretext for FCA retaliation. *Id.* at 647 ("There is no evidence raising a serious doubt

that the Board lacked a 'reasonable belief' as to the manifold reasons for discharging

---

[1] The Michigan District Court found that Scott's account regarding losing the tapes was not credible. The district court based this finding on the record evidence provided by the parties; the court did not provide a hearing on this issue.

4

plaintiff—*i.e.*, falsification of evidence [in the form of altering the corporate minutes] . . . .").

After the summary judgment order, Metropolitan moved for sanctions, alleging that Scott engaged in litigation misconduct during discovery. The District Court issued two opinions regarding the sanctions issue, both of which contained factual findings and legal conclusions central to the Bankruptcy Court's orders. The Michigan District Court granted Metropolitan's request for sanctions and awarded Metropolitan over $1.6 million in attorney's fees and other expenses against Scott personally. *United States ex rel. Scott v. Metro. Health Corp.*, No. 1:02-CV-485, 2005 WL 2405961 (W.D. Mich. Sept. 29, 2005) [hereinafter *Scott Sanctions I*]; *United States ex rel. Scott v. Metro. Health Corp.*, No. 1:02-CV-485, 2005 WL 3434830 (W.D. Mich. Dec. 13, 2005) [hereinafter *Scott Sanctions II*].

Judge Enslen also presided over the sanctions phase of the case. While the Michigan District Court did not hold any hearings on Metropolitan's motion for sanctions, both parties submitted briefing and documentary evidence on the issue.[2] The District Court found that falsifying the minutes and concealing the tapes provided ample justification for the sanctions award:

> Given the remote likelihood that the non-disclosure was . . . due to a simple copying error, and given the email correspondence which reveals that [Scott] was involved in deliberate non-disclosure of additional tape recordings,[3] the Court concludes that [Scott's] non-disclosure of both the complete 2/7/02 recordings and the additional

---

[2] "In the instant case, the parties have been afforded 'notice and opportunity' in the form of briefing of multiple motions specifically relating to the liability and amount of 'bad faith' sanctions." *Scott Sanctions II*, 2005 WL 3434830, at *6. The Michigan District Court's failure to hold an evidentiary hearing will be discussed below.

[3] The District court was in possession of several emails between employees of Scott's Michigan counsel and Scott, which strongly suggested that Scott intentionally concealed the tapes. *Scott Sanctions I*, 2005 WL 2405961, at *4-6.

5

recordings was intentional, was motivated by a bad faith desire to conceal discovery materials, and had the effect of both delaying the resolution of the suit and forcing Defendants to pay avoidable legal expenses.[4]

*Scott Sanctions I*, 2005 WL 2405961, at *6. Due to the seriousness of Scott's conduct, the court concluded that a portion of the sanctions should include reasonable attorney's fees: "[g]iven the bad faith nature of the delayed disclosure and the prejudice caused by it, a significant financial sanction is justified. [Scott] will be required to pay the costs incurred because of the violation, including a reasonable attorney fee caused by the non-disclosure." *Id.* at *11. The court concluded the opinion with the following language, which describes the injury Metropolitan suffered as result of Scott's conduct:

> [Scott's] conduct in the filing of the suit, when she knew that she had without authority modified the Board minutes to make them inaccurate by including statements not made at the meeting and deleting statements made at the meeting, means that the filing of the suit was not objectively reasonable and was done in bad faith. This is particularly so because the bad faith conduct caused Defendants prejudice and necessitated Defendants' defense of a massive and costly but legally baseless suit.

*Id.* at *12.

In a separate opinion addressing the issue of the amount of sanctions, the District Court made additional findings regarding Scott's conduct and the injury Metropolitan suffered as a result. For example, the court found:

> As indicated above, this Court has previously found Plaintiff's litigation conduct in this suit to have been in "bad faith" due to her pursuit of the factually baseless retaliation claim as part of a multi-million dollar lawsuit, the intentional concealment of multiple tape recordings, including the crucial minutes tapes, and the filing of intentionally false affidavits on the minutes issue. The filing and litigation of the

---

[4] The court notes that Scott disputes much of these findings, and argues at length that the District Court improperly made these findings without giving her an opportunity for an evidentiary hearing. The court will address this argument below.

6

retaliation claim was, in light of this record, motivated by an "improper purpose" to harass and extort Plaintiff's former employer. *See First Bank of Marietta,* 307 F.3d at 524 (citing *Big Yank. Corp. v. Liberty Mut. Fire Ins. Co.,* 125 F.3d 308, 314 (6th Cir.1997)). In short, this was a case, like *Chambers* and *First Bank of Marietta,* that was long brewed and fermented in the liquor of "bad faith."

*Scott Sanctions II,* 2005 WL 3434830 at *6. The Michigan District Court also described Scott's conduct as "to deny secret wrongdoing, until confronted with undeniable evidence of it. . . . [S]he has not displayed any semblance of self-responsibility or remorse concerning either her wrongful workplace conduct or her wrongful litigation conduct[,]" *id.* at *2, and implied that Scott had acted "'vexatiously, wantonly, or for oppressive reasons.'" *Id.* at *5 (quoting *Alyeska Pipeline Serv, Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-259 (1975)).

Scott appealed both the order granting summary judgment to Metropolitan and the sanctions orders. In a lengthy opinion, the Sixth Circuit affirmed the Michigan District Court on all counts. *Scott v. Metro. Health Corp.*, 234 F. App'x. 341, 2007 WL 1028853 (6th Cir. 2007). Scott also petitioned for writ of certiorari to the United States Supreme Court, which was denied. *Scott v. Metro. Health Corp.*, 552 U.S. 1224 (2008).

On February 3, 2010, Scott filed a Chapter 7 bankruptcy petition in the Eastern District of North Carolina. Metropolitan subsequently initiated an adversary proceeding within the bankruptcy case, seeking a determination of the dischargeability of the $1,608,268.80 sanction award Scott owes Metropolitan. The Bankruptcy Court for the Eastern District of North Carolina ("Bankruptcy Court") agreed with Metropolitan that the sanctions constituted a debt incurred for willful and malicious injury and exempted the sanctions from discharge. *See* 11 U.S.C. § 523(a)(6). In its initial order, the Bankruptcy Court held that the Michigan District Court's sanctions opinions established that Scott had willfully and maliciously injured Metropolitan by

7

continuing to pursue a baseless lawsuit, and that Scott was collaterally estopped from re-litigating that issue in bankruptcy court. *Metro. Health Corp. v. Scott (In re Scott)*, Bankr. No. 10-00794-8-JRL, 2011 WL 672055, at *5 (Bankr. E.D.N.C. Feb. 17, 2011). It therefore entered summary judgment in favor of Metropolitan. *Id.* After Scott filed a motion for reconsideration, the Bankruptcy Court again held that collateral estoppel applied and re-affirmed its decision that the sanctions debt was non-dischargeable. *Metro. Health Corp. v. Scott (In re Scott)*, Bankr. No. 10-00794-8-JRL, 2011 WL 5902779, at *4-5 (Bankr. E.D.N.C. June 6, 2011). This appeal followed.

## II. STANDARD OF REVIEW

Federal district courts have jurisdiction to hear appeals from a bankruptcy court's final orders. 28 U.S.C. § 158(a). The bankruptcy court's findings of fact must be premised upon oral or documentary evidence, and are reviewed for clear error. Fed. R. Bankr. P. 8013. The bankruptcy court's conclusions of law are reviewed de novo. *Sartin v. Macik*, 535 F.3d 284, 287 (4th Cir. 2008).[5] The Bankruptcy Court's application of collateral estoppel and the grant of summary judgment are reviewed de novo. *Id.*; *In re French*, 499 F.3d at 351.

On motion for summary judgment, the court must examine the evidence presented by both parties and determine if there is a need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Yarborough v. Montgomery*, 554 F. Supp. 2d 611, 614 (D.S.C. 2008). The court will examine "whether the evidence presents a sufficient disagreement to

---

[5] The standard of review is different when the district court reviews bankruptcy court decisions in "non-core proceedings." However, the bankruptcy orders at issue in this appeal arise out of core proceedings. *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987) ("If the proceeding is one that would arise only in bankruptcy, it is also a core proceeding; for example, the filing of a proof of claim or an objection to the discharge of a particular debt.").

8

require submission to a jury or whether it is so one-sided that one party must prevail as a matter

of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-53 (1986). Where the moving party

shows that the evidence is so one-sided that they should prevail as a matter of law, the burden

shifts to the non-moving party to come forward with affidavits, depositions, answers to

interrogatories, or other evidence demonstrating that there is a genuine issue of material fact that

requires trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986); *Matsuhita*, 475 U.S. at

587; *Clark v. Alexander*, 85 F.3d 146, 150 (4th Cir. 1996). An issue of fact is genuine if a

reasonable jury could find for the non-moving party. *Anderson*, 477 U.S. at 248. A fact is

material if proof of the fact might affect the outcome of the case under the substantive law. *Id.*

In deciding the motion, the facts should be viewed in the light most favorable to the non-moving

party, and all reasonable inferences should be made in favor of the non-moving party. *Id.* at 255;

*Smith v. Va. Commonwealth Univ.*, 84 F.3d 672, 675 (4th Cir. 1996). However, the United

States Supreme Court has noted, "[w]hen opposing parties tell two different stories, one of which

is blatantly contradicted by the record such that no reasonable jury could believe it, a court

should not adopt that version of the facts for purposes of ruling on a motion for summary

judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). This summary judgment standard has

been adopted for purposes of adversary proceedings in bankruptcy court. Fed. R. Bankr. P. 7056.

### III. ANALYSIS

On appeal, Scott maintains that the Bankruptcy Court's ruling that Scott is collaterally

estopped from arguing that she did not willfully and maliciously injure Metropolitan was

erroneous.

9

## A. Legal framework

Bankruptcy courts may apply collateral estoppel in adversary proceedings regarding

dischargeability. *Grogan v. Garner*, 498 U.S. 279, 284-85 n.11 (1991). Federal principles of

collateral estoppel apply where, as here, the prior judgment was rendered in federal court.

*Wolstein v. Docteroff (In re Docteroff)*, 133 F.3d 210, 214 (3d Cir. 1997). The elements of

collateral estoppel include:

> (1) the issue or fact is identical to the one previously litigated;
> (2) the issue or fact was actually resolved in the prior proceeding;
> (3) the issue or fact was critical and necessary to the judgment in the prior proceeding;
> (4) the judgment in the prior proceeding is final and valid; and
> (5) the party to be foreclosed by the prior resolution of the issue or fact had a full and fair opportunity to litigate the issue or fact in the prior proceeding.

*In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326 (4th Cir. 2004).[6]

In some cases, even when all the elements of collateral estoppel are present, a court may

decline to apply the doctrine. As the Third Circuit has explained, "[e]ven when the requirements

of the general rule of collateral estoppel are satisfied, the Court must consider whether there are

special circumstances present which make it inequitable or inappropriate to foreclose relitigation

of a previously determined issue." *Nat'l R.R. Passenger Corp v. Pa. Pub. Util. Comm'n*, 288

---

[6] The Bankruptcy Court applied the collateral estoppel elements from *Combs v. Richardson*, 838 F.2d 112, 115 (4th Cir. 1988), which are slightly different than the elements found in the *Microsoft* case. The primary difference involves the second factor, which in *Combs* reads "[the] issue was actually litigated," *id.*, but in *Microsoft* reads "the issue . . . was actually resolved in the prior proceeding." *Microsoft*, 355 F.3d at 326. While quoting *Microsoft* for the collateral estoppel elements, Scott uses the "actually litigated" language instead of "actually resolved" in the analysis section of her brief. As will be discussed below, because Scott's argument with respect to the "actually litigated" factor involves the Michigan District Court's failure to hold a full evidentiary hearing on the issue of willfulness, the court finds that this argument is more appropriately addressed under the "full and fair opportunity to litigate" factor, rather than the "actually litigated/actually resolved" second factor.

10

F.3d 519, 528 (3d. Cir. 2002). The Restatement (Second) of Judgments provides a list of

equitable factors that courts generally consider:

> Although an issue is actually litigated and determined by a valid and final judgment,
> and the determination is essential to the judgment, relitigation of the issue in a
> subsequent action between the parties is not precluded in the following
> circumstances:
>
> (1) The party against whom preclusion is sought could not, as a matter of law, have
> obtained review of the judgment in the initial action; or
>
> (2) The issue is one of law and (a) the two actions involve claims that are
> substantially unrelated, or (b) a new determination is warranted in order to take
> account of an intervening change in the applicable legal context or otherwise to avoid
> inequitable administration of the laws; or
>
> (3) A new determination of the issue is warranted by differences in the quality or
> extensiveness of the procedures followed in the two courts or by factors relating to
> the allocation of jurisdiction between them; or
>
> (4) The party against whom preclusion is sought had a significantly heavier burden
> of persuasion with respect to the issue in the initial action than in the subsequent
> action; the burden has shifted to his adversary; or the adversary has a significantly
> heavier burden than he had in the first action; or
>
> (5) There is a clear and convincing need for a new determination of the issue (a)
> because of the potential adverse impact of the determination on the public interest or
> the interests of persons not themselves parties in the initial action, (b) because it was
> not sufficiently foreseeable at the time of the initial action that the issue would arise
> in the context of a subsequent action, or (c) because the party sought to be precluded,
> as a result of the conduct of his adversary or other special circumstances, did not have
> an adequate opportunity or incentive to obtain a full and fair adjudication in the
> initial action.

*Nat'l R.R.*, 288 F.3d at 525 n.3 (quoting Restatement (Second) of Judgments § 28 (1982)).

Scott launches four arguments on appeal: (1) the Bankruptcy Court erred in holding the

Michigan District Court's finding that Scott engaged in bad faith litigation misconduct was

identical to the issue of whether Scott willfully and maliciously injured Metropolitan for

purposes of § 523(a)(6); (2) the Bankruptcy Court erred in finding that the issue of willfulness

11

was actually litigated; (3) the Bankruptcy Court erred in finding that Scott was given a full and

fair opportunity to litigate the issue of bad faith; and (4) the Bankruptcy Court erred in finding

that equitable principles did not preclude application of collateral estoppel in this case. The court

will address each of Scott's arguments.

## B. Identical Issues

The first element of collateral estoppel is "the issue or fact is identical to the one

previously litigated." *Microsoft*, 355 F.3d at 326. Scott argues that the Bankruptcy Court

applied the wrong standard for determining whether the Michigan District Court sanctions

opinions provided sufficient findings to establish that she willfully and maliciously injured

Metropolitan. The United States Supreme Court has held that the "willful injury" language in §

523(a)(6) refers to "a deliberate or intentional *injury*, not merely a deliberate or intentional *act*

that leads to injury." *Kawaauhau v. Geiger (In re Geiger)*, 523 U.S. 57, 61 (1988). "[D]ebts

arising from recklessly or negligently inflicted injuries do not fall within the compass of §

523(a)(6)." *Id.* at 64.

Unfortunately, the *Geiger* opinion did not end the questions regarding the definition of

willfulness under § 523(a)(6) and the parties now seek to draw the court into an intricate debate

regarding the proper definition of willfulness in the Fourth Circuit. Briefly, the argument can be

summarized as follows. In many circuits, the Courts of Appeals define willfulness using a purely

subjective approach. This approach is succinctly summarized by the Ninth Circuit: "[Section]

523(a)(6)'s willful injury requirement is met only when the debtor has a subjective motive to

inflict injury or when the debtor believes that injury is substantially certain to result from his own

conduct." *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1142 (9th Cir. 2002). In contrast, the Fifth

12

Circuit employs the "objective approach" to defining willfulness under § 523(a)(6): "[willfulness may be found] where there is either an objective substantial certainty of harm or a subjective motive to cause harm." *Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 606 (5th Cir. 1998). Under the Fifth Circuit's approach, if an objectively reasonable person would have been substantially certain that injury would occur, then willfulness is satisfied for purposes of § 523(a)(6) even if the particular debtor was not himself substantially certain that harm would occur. Under the "subjective approach," only the debtor's state of mind is examined and it is irrelevant whether an objectively reasonable person would have been substantially certain that injury would occur.

The parties dispute whether the Fourth Circuit has adopted the "subjective" or "objective" approach. Scott cites to *First Nat'l Bank v. Stanley (In re Stanley)*, 66 F.3d 664 (4th Cir. 1995) for the theory that the Fourth Circuit has adopted the subjective approach. In *Stanley*, the Fourth Circuit explained that "[under § 523(a)(6)], it is the debtor's subjective state of mind that is relevant; it does not matter that a 'reasonable debtor' should have known that his act would adversely affect another's rights." *Id.* at 668. The parties apparently agree that this is the only published Fourth Circuit case addressing § 523(a)(6)'s *scienter* requirement.

Despite this agreement, Metropolitan advances the argument that *Stanley* is no longer good law. Metropolitan (correctly) notes that *Stanley* preceded the Supreme Court's *Geiger* opinion, which itself substantially changed the *scienter* requirement under § 523(a)(6). Metropolitan maintains that *Geiger* worked such a significant change in the interpretation of § 523(a)(6) that any Fourth Circuit case interpreting § 523(a)(6) before *Geiger* is necessarily suspect. As support for this argument, Metropolitan cites to *Parsons v. Parks (In re Parks)*, 91 F.

13

App'x 817, 819, 2003 WL 22989684, at *1 (4th Cir. Dec. 19, 2003), an unpublished case from

the Fourth Circuit. In *Parsons,* the Fourth Circuit potentially adopted the Fifth Circuit's

objective standard: "the test [for willfulness under § 523(a)(6)] is whether the debtor acted with

'substantial certainty [that] harm [would result] or a subjective motive to cause harm.'" *Id.*

(quoting *In re Miller*, 156 F.3d at 603).[7]  Metropolitan also provides several bankruptcy court

opinions from within the Fourth Circuit which have, citing *Parsons*, applied the objective

approach. However, at least one unpublished bankruptcy court decision applied the subjective

approach. *Compare Lafarge North Am., Inc. v. Poffenberger (In re Poffenberger)*, 471 B.R. 807,

822 (Bankr. D. Md. 2012) ("'The Court of Appeals for the Fourth Circuit appears to have

adopted the 'objective substantial certainty' or 'subjective motive' test to satisfy the willfulness

requirement.'" (quoting *Haas v. Trammell (In re Trammell)*, 388 B.R. 182, 186-87 (Bankr. E.D.

Va. 2008))), *and Reed v. Owens (In re Owens),* 449 B.R. 239, 254 (Bankr. E.D. Va. 2011) ("The

Eastern District of Virginia adheres to the 'objective substantial certainty' or 'subjective motive'

test to satisfy the willfulness requirement."), *with Wells Fargo Advisors, LLC v. Nawroz (In re

Nawroz)*, Bankr. No. 10-20633-BFK, 2011 WL 4900035, at *4 (Bankr. E.D. Va. Oct. 14, 2011)

(applying the *In re Stanley* approach and requiring a finding of subjective intent to cause injury

before holding a debt non-dischargeable under § 523(a)(6)).

 Here, the Bankruptcy Court arguably used the Fifth Circuit's objective approach to the

---

[7] Notably, the Fourth Circuit omitted the language from the Fifth Circuit that indicates an objective approach: "[willfulness may be found] where there is either an *objective substantial certainty* of harm or . . . ." *In re Miller*, 156 F.3d at 606 (emphasis added). Metropolitan's argument is premised less on the specific language quoted from *Miller* and more on the fact that the Fourth Circuit quoted from *Miller* when it announced the test. In light of the court's ruling below, the court does not address whether *Parsons* sufficiently establishes that the Fourth Circuit has adopted the "objective approach" from the Fifth Circuit.

willfulness requirement.  The Bankruptcy Court explained that "[the Michigan District Court's

findings] are 'sufficient to show that the conduct amounted to a 'badge of intent' in qualifying as

a willful injury under § 523(a)(6).'"  *In re Scott*, 2011 WL 672055, at *3 (quoting *Mann Bracken,

LLP v. Powers (In re Powers)*, 421 B.R. 326, 338 (Bankr. W.D. Tex. 2009)).  Because the

Bankruptcy Court cited a bankruptcy court opinion from the Fifth Circuit and the "badges of

intent" language may arguably indicate that an objective approach was used, Scott argues that the

Bankruptcy Court erroneously applied the objective approach to the willfulness requirement.

Scott maintains that because willfulness requires a finding of subjective intent to cause injury and

the Michigan District Court's findings evidence, at best, an objective substantial certainty of

harm, the Bankruptcy Court erred when it held the issue of willfulness was identical to the issue

of bad faith litigation misconduct.

Ultimately, the court finds that the Michigan District Court opinion provides sufficient

findings of fact to satisfy either the subjective or objective approach to willfulness.  Therefore,

any error the Bankruptcy Court may have made in applying an objective approach[8] to the

willfulness requirement is harmless.  As discussed, the "subjective approach" defines willfulness

under § 523(a)(6) as "a subjective motive to inflict injury or when the debtor believes that injury

is substantially certain to result from his own conduct."  *Carrillo*, 290 F.3d at 1142; *see also

Stanley*, 66 F.3d at 668 ("[under § 523(a)(6)], it is debtor's subjective state of mind that is

relevant; it does not matter that a 'reasonable debtor' should have known that his act would

adversely affect another's rights.").  The Michigan District Court's opinions leave virtually no

_____

[8]  As Metropolitan points out, the Bankruptcy Court's citation to the "badges of intent" language
and the District Court for the Western District of Texas does not conclusively show that the Bankruptcy
court used the "objective approach."

15

doubt that the court found that Scott acted with a subjective motive to inflict injury on Metropolitan. For example, the Michigan District Court makes the following findings regarding Scott's subjective intent: (1) "[Scott's] non-disclosure of both the complete 2/7/02 recordings and the additional recordings was intentional, was motivated by a bad faith desire to conceal discovery materials, and had the effect of both delaying the resolution of the suit and forcing Defendants to pay avoidable legal expenses[,]" *Scott Sanctions I*, 2005 WL 2405961, at *6; (2) "the filing of the suit was not objectively reasonable and was done in bad faith. This is particularly so because the bad faith conduct caused defendant prejudice and necessitated Defendants' defense of a massive and costly but legally baseless suit[,]" *id.* at *12; (3) "The filing and litigation of the retaliation claim was, in light of this record, motivated by an 'improper purpose' to harass and extort Plaintiff's former employer[,]" *Scott Sanctions II*, 2005 WL 3434830, at *6.

The findings that Scott pursued a factually baseless lawsuit in an effort to "extort" money from her former employer is tantamount to a finding that Scott acted with the subjective intent to injure Metropolitan. Whether the Bankruptcy Court used the wrong standard for analyzing the "willful injury" prong of § 523(a)(6) is not relevant on this record because the opinions provide ample findings of fact related to Scott's subjective intent to cause injury. Thus, while the Michigan District Court did not specifically use the language "willful injury," the Bankruptcy Court correctly held that the findings of the Michigan court were identical to a finding of willful and malicious injury.[9]

---

[9] The parties do not raise any arguments regarding the Bankruptcy Court's conclusion that the Michigan District Court's findings were sufficient to satisfy the "malicious" and "injury" elements of § 523(a)(6).

16

## C. Actually Litigated

Scott also argues that the Bankruptcy Court erred in finding that "willfulness" was actually litigated in the Michigan District Court. Scott's argument can be summarized as follows: (1) willfulness under § 523(a)(6) requires a finding regarding a party's subjective intent to cause injury; (2) the Michigan District Court made findings regarding Scott's subjective intent and credibility without holding any hearings in which it personally observed Scott's testimony; (3) subjective intent and credibility determinations are rarely appropriate on summary disposition (*i.e.*, without an opportunity for an evidentiary hearing) under Fourth Circuit precedent; therefore, (4) Metropolitan cannot establish that the issue of willfulness was actually litigated before the Michigan District Court.

Assuming for the sake of argument that the first three premises are correct, the court finds that the conclusion does not follow from the premises. As Metropolitan points out in its brief, the "actually litigated" collateral estoppel element does not require a full evidentiary hearing. *Swentek v. USAIR, Inc.*, 830 F.2d 552, 561 (4th Cir. 1987), *abrogated on other grounds*, *Mikels v. City of Durham, N.C.*, 183 F.3d 323 (4th Cir. 1999) ("Collateral estoppel is appropriate where the identical issue was 'actually litigated,' that is, contested by the parties and submitted for determination by the court."). There is simply no question that the issue of Scott's intent to cause Metropolitan injury by pursuing a baseless lawsuit was contested by the parties and submitted for determination by the court. After Metropolitan moved for sanctions, Scott submitted a response, a sur-reply, and an amended response. Inclusive of exhibits, these responses totaled 453 pages. Br. of Appellee [DE-33] at 17. The Michigan District Court considered all of this briefing and found that, "[Plaintiff's] filing of the suit was not objectively reasonable and was done in bad

17

faith." *Scott Sanctions I*, 2005 WL 2405961, at *12. That the Michigan District Court did not hold a hearing before finding that Scott acted in bad faith has no bearing on the issue of whether her bad faith was contested by the parties and submitted for a determination by the court. That is all the second collateral estoppel element requires.

To the extent Scott argues that the Fourth Circuit requires an evidentiary hearing before a court can make a finding regarding a party's intent, that issue relates to the fifth element of collateral estoppel: "whether the party had a full and fair opportunity to litigate the issue or fact in the prior proceeding." Whether the issue was "actually litigated" in the prior proceeding refers generally to whether the parties had an opportunity to contest the issue and whether the court entered a final ruling on the issue.[10] *Swentek*, 830 F.2d at 561. By contrast, "a full and fair opportunity to litigate the issue" refers to whether the party had "'a fair opportunity procedurally, substantively and evidentially to pursue his claim.'" *Blonder-Tongue Labs., Inc.* v. *Univ. of Illinois Found.*, 402 U.S. 313, 333 (1971) (quoting *Eisel v. Columbia Packing Co.*, 181 F. Supp. 298, 301 (Mass. 1960)). Thus, Scott's argument regarding the Michigan District Court's failure to hold a full evidentiary hearing on the issue of her subjective intent to cause injury is more appropriately addressed under the fifth factor in the collateral estoppel analysis.

## D. Full and Fair Opportunity to Litigate

Turning to the fifth element, Scott maintains that she was denied a full and fair

---

[10] As mentioned above, part of the problem here is that the parties conflate the *Combs* and *Microsoft* elements for collateral estoppel. The *Microsoft* approach is preferable because it describes the second element as "whether the issue was actually resolved in the prior proceeding." *Microsoft*, 355 F.3d at 326. This approach dis-aggregates the question of whether the issue was actually resolved in the prior proceeding from the question of whether the party sought to be precluded received a full and fair opportunity to litigate the issue.

18

opportunity to litigate the issue of bad faith[11] because the Michigan District Court imposed $1.6 million in sanctions without holding an evidentiary hearing. Scott maintains that the Michigan District Court's failure to hold an evidentiary hearing on Metropolitan's sanctions motion denied her due process of law and a full and fair opportunity to litigate the bad faith issue.

Collateral estoppel is not appropriate where a party did not have "a fair opportunity procedurally, substantively and evidentially to pursue [her] claim the first time." *Blonder-Tongue Labs.*, 402 U.S. at 333; *see also Montana v. United States*, 440 U.S. 147, 164 n.11 (1979) ("[I]f there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation [redetermination of the issue is warranted.]"). Furthermore, it is well established that due process protections, including notice and an opportunity for a hearing, attach in the context of sanctions proceeding. *Roadway Express Inc. v. Piper*, 447 U.S. 752, 767 (1980) ("Like other sanctions, attorney's fees certainly should not be assessed lightly or without fair notice and an opportunity for a hearing on the record."); *Larsen v. City of Beloit*, 130 F.3d 1278, 1286-87 (7th Cir. 1997) (explaining notice and opportunity to be heard required before court may impose sanctions). However, it is equally well-established that due process does not require a full evidentiary hearing in civil sanctions proceedings,[12] especially in cases where a judge has

---

[11] Scott assumes, at least for purposes of argument, that the issue of her bad faith and the issue of willfulness are identical in her analysis of the fifth element.

[12] No argument is made that Scott's sanctions were criminal in nature, nor could Scott maintain such an argument. Scott's sanctions were payable to the opposing party, and intended as compensation for the loss caused by her bad faith litigation misconduct. *Bradley v. Am. Household Inc.*, 378 F.3d 373, 378 (4th Cir. 2004) ("The basic difference between civil and criminal contempt sanctions is that civil contempt sanctions are intended to 'coerce the contemnor into compliance with court orders or to compensate the complainant for losses sustained.'" (quoting *Buffington v. Baltimore Cnty. Md.*, 913 F.2d 113, 133 (4th Cir. 1990))).

19

presided over lengthy litigation. *DiPonio Const. Co., Inc. v. Int'l Union of Bricklayers & Allied Craftworkers, Local 9*, 687 F.3d 744, 752 (6th Cir. 2012) ("'In this circuit, there is no requirement that a full evidentiary hearing be held before imposing sanctions.'" (quoting *Wilson-Simmons v. Lake Cnty. Sheriff's Dep't*, 207 F.3d 818, 822 (6th Cir. 2000))); *Cook v. Am. Steamship Co.*, 134 F.3d 771, 775 (6th Cir. 1998) ("An order to show cause, along with an opportunity to respond to said order, can be sufficient, in certain circumstances to provide the necessary procedure safeguards [in the context of imposing civil sanctions]."); *In re Kunstler*, 914 F.2d 505, 521-22 (4th Cir. 1990) ("Due process does not require an evidentiary hearing before sanctions are imposed . . . .").

In light of this authority, the court agrees that the Michigan District Court was not required to hold a full evidentiary hearing before sanctioning Scott for her bad faith litigation misconduct in the first instance. As noted, the Sixth Circuit affirmed the Michigan District Court's sanctions order despite the failure to hold an evidentiary hearing.[13]   However, as Scott stresses, the procedural posture of the case has changed. The question is not, as it was before the Sixth Circuit, whether due process requires a full evidentiary hearing before a district court can impose civil sanctions on a finding of bad faith. The issue before this court is whether Scott had

---

[13]   As Scott points out, the Sixth Circuit opinion does not specifically address the propriety of imposing sanctions without providing an opportunity for a full evidentiary hearing. Contrary to Scott's argument that Sixth Circuit did not address the issue because it did not "fully register" that no hearing took place, the court presumes the Sixth Circuit did not address it because the overwhelming weight of authority in the Sixth Circuit indicates that a full evidentiary hearing is not required before the imposition of sanctions. The fact that the Sixth Circuit "affirm[ed] for the reasons stated by the district court" *Scott*, 234 F. App'x. at 367, supports this argument. The Michigan District Court noted that due process does not require a full evidentiary hearing before imposing sanctions, and, having presided over the case for several years and possessing incontrovertible evidence of Scott's bad faith, the Michigan District Court determined that no hearing was necessary. *Scott Sanctions II*, 2005 WL 3434830, at *6.

20

a full and fair opportunity to litigate the finding of bad faith litigation misconduct, such that she should be collaterally estopped from litigating the issue of whether she willfully injured Metropolitan.

The parties have not provided, and the court has not found, a case in which a court has denied collateral estoppel on the issue of willfulness under § 523(a)(6) on the basis that the litigant did not receive a full evidentiary hearing in the prior proceeding.  And even if such a case existed, the court is convinced that Scott had a full and fair opportunity to litigate the issue of her bad faith in these particular circumstances.  After Metropolitan filed its motion for sanctions, Scott filed a 199 page response (including exhibits), a five page sure-reply, a 249 page amended response (including exhibits), and a fifty-nine page brief (including exhibits) in support of a motion for reconsideration of the sanctions order.  Br. of Appellee [DE-33] at 17.  The Michigan District Court considered the first three briefs[14] and issued a lengthy opinion describing its reasoning for sanctioning Scott.  *Scott Sanctions I*, 2005 WL 2405961.  Scott was obviously provided ample notice and opportunity to be heard.  *See Kunzelman v. Thompson*, 799 F.2d 1172, 1178 (7th Cir. 1986) ("[Full and fair opportunity to litigate satisfied where issue] was fully briefed and argued by both sides.  A full evidentiary hearing is not always necessary to provide due process protection or a fair opportunity to litigate the issue."); *Searing v. Hayes*, 684 F.2d 694, 695 (10th Cir. 1982) (holding a full and fair opportunity to litigate does not always require full evidentiary hearing).

More significantly, Scott has admitted, on the record, that she altered the minutes of the corporate board meeting and submitted them as a true and accurate representation of what

---

[14] The motion for reconsideration was ultimately withdrawn.

21

occurred at the meeting. *Scott*, 234 F. App'x at 351-52; *Scott*, 375 F. Supp. 2d at 646. The fact that she continued to pursue this litigation despite her indisputable knowledge that she doctored the minutes establishes her bad faith. A full evidentiary hearing is not necessary when a litigant has admitted the misconduct.

For the same reason, Scott's reliance on *Rogal v. ABC, Inc.*, 74 F.3d 40 (3d Cir. 1996) is misplaced. In *Rogal*, after a trial on the merits, the district court imposed sanctions on the plaintiff without a full evidentiary hearing. *Id.* at 43. The sanctions related to the plaintiff's trial testimony and the "numerous inconsistencies and contradictions" in his testimony. *Id.* The district court refused the plaintiff's request for an evidentiary hearing because "the actionable conduct took place in the presence of the court and is documented by the record." *Id.* The Third Circuit reversed, holding the due process clause required a full evidentiary hearing "under the particular facts and circumstances of the case before us." *Id.* at 44. The Third Circuit reasoned that the plaintiff did not have the same incentive at trial to clear up all the contradictions and inconsistencies in his testimony as he would at an evidentiary hearing on the motion for sanctions because his focus at trial was on proving the elements of slander rather than proving that his testimony was accurate. *Id.* at 45 ("Given the nature of the disputed testimony, we are persuaded by Dr. Rogal's contention that he did not have the same incentive at trial to try to clear up all of the apparent contradictions and inconsistencies in his testimony or to try to show his good faith as he would have had at an evidentiary hearing on the question of sanctions."). Notably, the Third Circuit also observed,

> [o]ur holding is a narrow one and depends heavily on the specific nature of Dr. Rogal's alleged misrepresentations and the relationship of each instance of contradictory or inconsistent testimony to the central issues of the litigation. We

22

> recognize that in many instances in which sanctionable conduct occurs in the court's
> presence, no hearing is required."

*Id.*

The court is convinced that *Rogal* is distinguishable on the basis that Scott has admitted

the sanctionable conduct in this case. Scott's concealment of the fact that she altered the

corporate minutes (which she later admitted) establishes that she pursued a factually baseless

lawsuit with the intent to extract a money judgment from Metropolitan. In contrast, the plaintiff

in *Rogal* potentially could have provided a good faith justification for the inconsistencies in his

trial testimony, but he was not given a sufficient opportunity to do so. Furthermore, the *Rogal*

court found that the plaintiff did not have the same incentive during the trial to clear up the

misrepresentations or contradictions in his testimony as he would at an evidentiary hearing on the

motion for sanctions. This finding was central to the *Rogal* court's holding that due process

required a full evidentiary hearing on the issue of the plaintiff's bad faith. *Id.* In contrast, Scott

had every incentive throughout the lengthy litigation in the Michigan District Court to provide a

good faith basis for her conduct in altering the corporate minutes. If Scott could have provided a

good faith reason to alter the corporate minutes, Metropolitan may not have had sufficient cause

to terminate her employment and she may have succeeded on her retaliation claim. Instead, she

chose to conceal this conduct until, as the Michigan District Court noted, "confronted with

undeniable evidence of it." *Scott Sanctions II*, 2005 WL 3434830, at *2.

In a related argument, Scott maintains that collateral estoppel is inappropriate in this case

because the Michigan District Court decided the issue of her subjective intent without holding an

23

evidentiary hearing.[15]  Scott relies on the Fourth Circuit decision in *Mercantile Peninsula Bank v. French (In re French)*, 499 F.3d 345 (4th Cir. 2007).  In *French*, the Fourth Circuit considered whether a bankruptcy court erroneously granted summary judgment on the issue of whether the debtor "made a statement under oath which he knew to be false, and . . . made the statement willfully, with the intent to defraud." *Id.* at 352.  The bankruptcy court held on summary judgment that the debtor willfully made a fraudulent statement. *Id.*  The bankruptcy court's opinion discredited multiple affidavits submitted by the debtor indicating he was suffering from a medical illness that caused memory problems and confusion and that he did not intentionally make a false statement. *Id.* at 352-53.  The Fourth Circuit reversed, noting that the bankruptcy court failed to view the evidence in the light most favorable to the non-moving party, failed to consider whether a reasonable juror could have found for the non-moving party, and made credibility determinations "which are not appropriate in a court's assessment of a motion for summary judgment." *Id.* at 353.  The Fourth Circuit also concluded that "'a determination concerning fraudulent intent depends largely upon an assessment of the credibility and demeanor of the debtor.'" *Id.* (quoting *Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 252 (4th Cir. 1987)).

The court is not convinced, as Scott argues, that *French* lays down a bright-line rule that district courts can never make credibility determinations or determinations regarding fraudulent intent based on the record evidence.  In *French*, the court was presented with multiple conflicting affidavits that created a genuine issue of material fact regarding the debtor's intent.  In this case,

---

[15] Scott addresses this argument in the context of whether the issue of willfulness was "actually litigated."  However, as explained above, it is more logically addressed under the "full and fair opportunity to litigate" collateral estoppel factor.

24

Scott's submission of affidavits indicating that her version of the board meeting minutes were

accurate, her later admission that she altered the minutes, and the fact that she continued to

pursue the lawsuit despite knowledge that Metropolitan had ample cause to terminate her

employment establishes her bad faith litigation misconduct and substantially distinguishes this

case from *French*.  Because Scott has admitted altering the minutes, *Scott*, 375 F. Supp. 2d at

636-39, 646-47 ("In this case, [Scott] has admitted facts which establish beyond any genuine

issue of material fact that she wrongly altered corporate minutes."); *Scott*, 234 F. App'x at 351

("Scott expressly admitted that she secretly altered the corporate minutes.  That alone was

sufficient to warrant Scott's discharge."), both the Michigan District Court and the Bankruptcy

Court had ample evidence of Scott's intentional litigation misconduct.  Scott may not admit

litigation misconduct and later, after incurring sanctions for the misconduct, argue that she did

not receive a full and fair opportunity to litigate the misconduct.

In upholding the summary judgment award, the sanctions award, and rejecting Scott's

argument that Judge Enslen should have recused, the Sixth Circuit noted,

> The judge's credibility assessment is most simply and logically explained by the
> evidence in the record, not by speculation about otherwise unproven bias. Most
> significant, Scott proved herself to be untrustworthy and untruthful when she (1)
> surreptitiously altered minutes of the February 7, 2002, board meeting; (2) took tapes
> of that meeting from her assistant in April 2002 and refused requests to return them,
> removing the most direct, objective means of verifying what was said at the meeting;
> (3) said she intended to review the tapes to make sure her unauthorized alteration
> ("correction") of the draft minutes was accurate, but somehow never found the tapes
> in order to perform that check; (4) admittedly found one of the tapes, which
> contained part of the meeting, in June 2002, but withheld it; and (5) later in this
> litigation, by "sheer luck," found all three tapes of the meeting. On this record, the
> judge did not need personal bias to conclude that Scott was less credible than Metro
> as to her conduct and the cause of her discharge.

*Scott*, 234 F. App'x at 363-34.  As the Sixth Circuit explained, the evidence "in the record"

overwhelmingly supports each of the above conclusions, and provides ample foundation for a finding that Scott intentionally pursued a factually baseless retaliation claim against Metropolitan. As the fourth separate Federal Court to review this record, the court agrees Scott's bad faith is established by the documented record evidence. No amount of live testimony or cross examination could possibly refute this record. The fact that Scott did not receive a full evidentiary hearing does not, in the context of this record and this case, mean she did not receive a full and fair opportunity to litigate the issue of whether she willfully injured Metropolitan.

Finally, Scott advances the argument that she was not provided a full and fair opportunity to litigate the issue of bad faith because the same attorneys who represented her during the substantive litigation represented her throughout the sanctions proceedings. *See In re Ruben*, 825 F.2d 977, 985-87 (6th Cir. 1987) (reversing sanction award against a party where party was "abandoned" by her attorneys at the sanctions hearing and noting that district courts should be alert to the conflicts that may arise where a party is represented by counsel in both the substantive litigation and the sanctions proceeding). This argument is without merit. Scott presents no evidence indicating that her attorneys "abandoned" her during the sanctions proceedings or that the potential conflict had any affect on whether she received a full and fair opportunity to litigate the issue of her bad faith. If the potential conflict had a detrimental effect on Scott's opposition to sanctions, surely Scott could point to some evidence of that in this voluminous record.

**E.  Equitable Factors**

Scott's final argument is the Bankruptcy court erred in applying collateral estoppel because equitable factors should preclude application of the doctrine in this case. As explained above, even in cases where the formal elements of collateral estoppel are present, a court may

26

decline to apply the doctrine where "there are special circumstances present which make it inequitable or inappropriate to foreclose relitigation of a previously determined issue." *Nat'l R.R.*, 288 F.3d at 528. Scott focuses on the third and fifth elements from the Restatement (Second) of Judgments and the *National Railroad* case:

> (3) A new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts or by factors relating to the allocation of jurisdiction between them; or
>
> . . . .
>
> (5) There is a clear and convincing need for a new determination of the issue (a) because of the potential adverse impact of the determination on the public interest or the interests of persons not themselves parties in the initial action, (b) because it was not sufficiently foreseeable at the time of the initial action that the issue would arise in the context of a subsequent action, or (c) because the party sought to be precluded, as a result of the conduct of his adversary or other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action.

*Nat'l R.R.*, 288 F.3d at 525 n.3 (quoting Restatement (Second) of Judgments § 28 (1982)). Scott maintains that because she did not receive an evidentiary hearing on the issue of sanctions, significant differences exist in the "quality and extensiveness of the procedures followed in the two courts[,]" *id.*, and she did not have "an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action." *Id.* Scott argues that these equitable factors weigh against application of collateral estoppel in this case.[16]

However, as Metropolitan points out, Scott's argument omits a crucial fact: Scott never

---

[16] Scott also cites the language from the Fifth factor "there is a clear and convincing need for a new determination of the issue because of the potential adverse impact of the determination on the public interest" as support for her argument that public policy concerns regarding whistleblower activity weigh against application of collateral estoppel. The court does not agree. As Metropolitan points out, the Michigan District Court orders make it "abundantly clear" that it sanctioned Scott on the basis of her litigation misconduct, which in no way relates to her whistleblowing activity. Br. for Appellees [DE-33] at 21.

27

requested an evidentiary hearing in the Michigan District Court regarding Metropolitan's motion for sanctions. After Metropolitan filed the sanctions motion, Scott submitted a response brief in opposition, a sur-reply, and an amended response. None of these documents contained a request for an evidentiary hearing on the sanctions motion, and Scott's reply brief in this court concedes as much. *See* Reply Br. of Appellant [DE-38] at 12 (noting multiple requests for hearings regarding other motions, but no requests for hearings on the sanctions issue until the withdrawn motion for reconsideration). While it is true her motion for reconsideration of the sanctions order did contain a request for a full evidentiary hearing, that motion was withdrawn.

Scott's failure to request an evidentiary hearing is fatal to her argument that equitable principles preclude application of collateral estoppel in this case. As Scott's own cited authority makes clear, a court should not apply collateral estoppel where a litigant, "*without fault of its own*, was deprived of crucial evidence in the first litigation." *Jack Faucett Assocs. Inc. v. AT&T*, 744 F.2d 118, 128 (D.C. Cir. 1984) (emphasis added); *see also Blonder-Tongue Labs.*, 402 U.S. at 333 (explaining a litigant does not have a full and fair opportunity to litigate an issue where "without fault of his own, [she] was deprived of crucial evidence"). Because Scott did not request a full evidentiary hearing on the sanctions issue, she cannot seriously argue in this court that "without fault of [her] own" she was "deprived of crucial evidence in the first litigation." *Jack Faucet*, 744 F.2d at 128. Had Scott requested an evidentiary hearing on the issue of sanctions and been denied, this court may be inclined to apply equitable principles in her favor. However, her failure to request an evidentiary hearing when she had every incentive to fully litigate a potential substantial sanctions award strongly counsels against applying equitable principles in this case. *See Blonder-Tongue Labs.*, 402 U.S. at 333 (noting courts should

28

consider a party's "incentive to litigate" the issue in the prior proceeding before applying collateral estoppel).

## IV. CONCLUSION

For the foregoing reasons, the Bankruptcy Court's Order allowing summary judgment in favor of Metropolitan on the issue of the dischargeability of the sanctions award, February 17, 2011 Bankruptcy Court Order, Case No. 10-00794-8-JRL, and the order denying reconsideration, June 6, 2011 Bankruptcy Court Order, Case No. 10-00794-8-JRL, are AFFIRMED. The case is REMANDED to the Bankruptcy Court for the Eastern District of North Carolina for proceedings consistent with this opinion. The court dispenses with oral argument because the facts and legal issues are adequately presented in the briefs and record and the decisional process would not be significantly aided by argument. Fed. R. Bankr. P. 8012.

SO ORDERED.

This the 23 day of August, 2013.

_James C. Fox_
JAMES C. FOX
Senior United States District Judge